U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

OCT 2 6 2007

CHRIS R. JOHNSON, CLERK

BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

NORTHPORT HEALTH SERVICES OF
ARKANSAS, LLC D/B/A FAYETTEVILLE
HEALTH AND REHABILITATION CENTER;
NORTHPORT HEALTH SERVICES, INC;
NHS MANAGEMENT, LLC

PLAINTIFFS

v.          Case No.: 07-5184

DEBBIE RUTHERFORD, AS POWER
OF ATTORNEY FOR ISAAC MITCHELL
RUTHERFORD, AN INCAPACITATED PERSON          DEFENDANT

## COMPLAINT TO COMPEL ARBITRATION

COME NOW the Plaintiffs, Northport Health Services of Arkansas, LLC d/b/a

Fayetteville Health and Rehabilitation Center; Northport Health Services, Inc.; and NHS

Management, LLC (jointly "Plaintiffs"), and file this Complaint against Debbie

Rutherford, as Power of Attorney for Isaac Mitchell Rutherford, an incapacitated person

(hereinafter "Mr. Rutherford" or "Defendant") to compel arbitration of claims asserted by

Mr. Rutherford against Plaintiffs in the Washington County Circuit Court, Arkansas, to

enjoin state court proceedings on Mr. Rutherford's claims, and for related relief.  As

grounds for this Complaint, Plaintiffs state the following:

## PARTIES, JURISDICTION, AND VENUE

1.      Separate Plaintiffs Northport Health Services of Arkansas, LLC d/b/a

Fayetteville Health and Rehabilitation Center and NHS Management, LLC are and at all

times mentioned herein were citizens of states other than the state of Arkansas.  For

purposes of determining citizenship under the federal removal statute, the citizenship of a

limited liability company is that of its members. *GMAC Commercial Credit LLC v. Dillard Dept. Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004) (holding that, "an LLC's citizenship for purposes of diversity jurisdiction is the citizenship of its members," quoting *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998)). The members of Northport Health Services of Arkansas, LLC d/b/a Fayetteville Health and Rehabilitation Center and NHS Management, LLC are and at all times mentioned herein were citizens of the State of Alabama.

2.    Separate Plaintiff Northport Health Services, Inc. is an Alabama corporation that maintains its principal place of business in Alabama.

3.    Defendant Mr. Rutherford is a citizen of the state of Arkansas.

4.    Complete diversity of citizenship exists between the Plaintiffs and Defendant.[1]

5.    The amount in controversy exceeds the sum or value of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest and costs, which is the minimum required for federal diversity jurisdiction.

6.    The transactions and contracts or agreements that are the subject of this action involve commerce among the several states (i.e., interstate commerce), and the controversies that are the subject of this action arise out of said transactions and contracts or agreements within the scope of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

---

[1] Complete diversity exists irrespective of whether the claims at issue are construed as being asserted on behalf of Debbie Rutherford and/or Isaac Mitchell Rutherford as both individuals are citizens of the State of Arkansas.

2

7.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(a)(1) and 9 U.S.C. § 4.

8.     Defendant is subject to the personal jurisdiction and process of this Court. Accordingly, pursuant to 28 U.S.C. 1391(a), venue is proper in this Court.

## FACTS

9.     On June 8, 2007, Mr. Rutherford filed suit against Plaintiffs in the Circuit Court of Washington County, Arkansas, Case No.: CV-07-1432-4.     (Rutherford's Complaint, Exhibit "1").  This suit seeks to compel the claims asserted by Mr. Rutherford in the Circuit Court of Washington County to arbitration.  Pursuant to well settled precedent, Mr. Rutherford is required to arbitrate his claims against the Plaintiffs.

10.     Defendant, Isaac Mitchell Rutherford, was a resident at Northport Health Services of Arkansas, LLC d/b/a Fayetteville Health and Rehabilitation Center ("Fayetteville") from April 29, 2006 until June 30, 2006.  (Rutherford's Complaint). Upon Mr. Rutherford's admission to Fayetteville on April 29, 2006, Mr. Rutherford and Karen Cathey, Mr. Rutherford's Responsible Party, met with a facility representative during the admissions process, Paul Hughes, Social Services Director.  (Affidavit of Paul Hughes, Exhibit "2").  Mr. Hughes explained the admissions process and discussed the Arbitration Agreement with Mr. Rutherford and Ms. Cathey.  *Id.*   Mr. Rutherford subsequently signed the Admission Agreement and Consent to Arbitration and Waiver of Jury Trial.  *Id.*   Ms. Cathey also signed the Admission Agreement and Consent to Arbitration and Waiver of Jury Trail as Mr. Rutherford's "Responsible Party." (Admission Agreement and Consent to Arbitration and Waiver of Jury Trial, Exhibit

"3"). The Admission Agreement explicitly included an Arbitration Agreement. By signing these documents at the time of Mr. Rutherford's initial admission, Mr. Rutherford and Ms. Cathey bound Mr. Rutherford and his heirs to the terms of the contract.

The Admission Agreement signed by Mr. Rutherford and Ms. Cathey provides, in relevant part, as follows:

> This Admission Agreement ("Agreement") states the terms and conditions agreed by you, [Karen Cathey], your Responsible Party, [Isaac Rutherford] and Northport Health Services of Arkansas, L.L.C. d/b/a Fayetteville Health and Rehabilitation Center as the licensed operator of the Facility. In this Agreement "you" and "your" refer to the person who wishes to become a resident at the Facility. Your Responsible Party is your legal guardian, if one has been appointed, your Attorney-in-Fact, if you have executed a power of attorney, or some other individual or family member who agrees to assist the Facility in providing for your health, care, and maintenance...

> *     *     *

> This Admission Agreement is a legally binding contract. Do not sign this Admission Agreement until you have read it and its terms.... By signing this Admission Agreement you are certifying that you have read this Agreement in its entirety and that you understand and agree to the terms of this Admission Agreement...

> *     *     *

> Dispute Resolution Program, Arbitration Agreement, and Waiver Of Jury Trial.
> (Read Carefully)

> A.    The Program.

> This Agreement creates a dispute resolution program (the "Program") which shall govern the resolution of any and all claims or disputes that would constitute a cause of action in a court of law that Facility may have now or in the future against you or any of your representatives, or that you or any of your representatives may have now or in the future against Facility, any parent or subsidiary of Facility, any company affiliated with Facility, or any of Facility's officers, directors,

4

{B0771588}

managers, employees, or agents acting in such capacity (hereinafter referred to as "Disputes") or that any other person may have arising out of the residency. The Disputes whose resolution is governed by the Program shall include, but not be limited to, claims for breach of contract or promise (express or implied); tort claims; and claims for violation of any federal, state, local, or other governmental law, statute, regulation, common law, or ordinance. Notwithstanding the foregoing, the Program shall not govern (i) any grievance brought either formally or informally under the Facility's grievance policy or with an appropriate state or federal agency (ii) an appeal to the appropriate state or federal entity regarding an involuntary transfer or discharge (iii) any complaint with an appropriate state or federal agency concerning the Facility's compliance with applicable regulations governing care, facility services, or residents' rights (iv) any complaint with an appropriate state or federal agency concerning resident abuse, neglect, misappropriation of resident property or non-compliance with any advance directive requirements or (v) any claim or dispute involving solely a monetary claim in an amount less than $25,000, and any such claim or dispute shall not be deemed a Dispute hereunder.

B. Arbitration.

All Disputes covered under the Program between you and the Facility shall be resolved by binding arbitration. Arbitration is a procedure in which the parties submit a Dispute to one or more mutually selected, impartial persons for a final and binding decision. The parties expressly agree to settle all Disputes by binding arbitration rather than by a judge, jury, or administrative agency.

Arbitration is a complete substitute for a trial by a judge or a jury. The parties hereby specifically waive their rights to a jury trial. Only Disputes that would constitute a legally cognizable cause of action in a court of law may be arbitrated.

**THE PARTIES ACKNOWLEDGE THAT BY ENTERING INTO THIS ARBITRATION AGREEMENT, THEY ARE GIVING UP THEIR RIGHT TO HAVE ANY SUCH DISPUTE DECIDED IN A COURT OF LAW BEFORE A JUDGE OR JURY, AND INSTEAD ARE ACCEPTING THE USE OF ARBITRATION.**

\*   \*   \*

5

F.  Binding Nature of Arbitration and Judicial Review

Subject only to the Arbitration Appeal Procedure, the decision of the arbitrator(s) shall be final and binding on the Facility and you.  Both parties acknowledge that arbitration is a complete substitute for traditional litigation and hereby waive their respective rights to file a private lawsuit and have that suit heard in a court by a judge or a jury.

\*       \*       \*

G.  General

The parties acknowledge that Facility regularly engages in transactions involving interstate commerce and that the services provided by Facility to you involve such interstate commerce.  The parties expressly agree that this Agreement shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

This Program shall survive the termination of this Agreement and shall apply to all Disputes whether they arise or are asserted before, during, or after the termination of this Agreement.  This program can only be revoked or modified by a writing or writings signed by all parties specifically stating an intent to revoke or modify this Program.

The invalidity of a portion or provision of this Program shall not affect the validity of any other portion or provision.  If any portion or provision of this Program is found to be invalid or unenforceable in any respect, the remainder of the Program will remain in full force and effect.

This Agreement constitutes the entire agreement of the parties with respect to the Program, as a complete and final integration thereof.  All understandings and agreements heretofore had between the parties are merged into this Agreement, which alone fully and completely expresses their understandings.  In entering this Agreement, neither party hereto has relied upon a representation or warranty made by either party which is not contained in this Agreement or expressly referred to herein.

\*       \*       \*

**By your execution of this Agreement and/or acceptance of service at the Facility, you and Responsible Party acknowledge, understand and agree that this Agreement includes a dispute resolution program for all claims and disputes between you and the**

{B0771588}

**Facility (except for monetary claims involving less than $25,000) covered by the Program (as previously defined herein); that all such claims and disputes will be resolved by binding ARBITRATION; that ARBITRATION is a complete substitute for traditional litigation; and that you and your Responsible Party waive your right to file a lawsuit in regard to a Dispute and to have any Dispute heard in a court by a judge or jury.**

> **You and your Responsible Party further acknowledge that you have had an opportunity to question a representative of the Facility concerning the terms of this Admission Agreement and the contents of the Handbook and that any questions you had have been answered to your satisfaction.**

(Exhibit "3", pp. 1, 10-13, 17).

The Admission Agreement signed by Mr. Rutherford and Ms. Cathey also states that "you and your responsible party agree that the terms, conditions, restrictions, and obligations of this Agreement bind you and your respective heirs, successors, and self-designated representatives acting on your behalf, including but not limited to, family members and any privacy or advocacy group." (Exhibit "3", p. 16). Accordingly, the agreement to arbitrate clearly extends to Mr. Rutherford and Debbie Rutherford.

On May 16, 2006, approximately two weeks after his admission to Fayetteville, Mr. Rutherford signed a "Statutory Power of Attorney" designating the named Plaintiff in the State Court Action, Debbie Rutherford, as his "agent (attorney in fact)." (Statutory Power of Attorney, Exhibit "4"). On July 5, 2006, after his residency at Fayetteville, Mr. Rutherford signed a "Durable Power of Attorney for Healthcare" designating Debbie Rutherford as his "agent" or "attorney in fact" to make decisions regarding his health care "during periods when my health care provider has determined I lack capacity to decide for myself." (Durable Power of Attorney, Exhibit "5").

7

On June 8, 2007, Debbie Rutherford filed the State Court Action as Power of Attorney for Mr. Rutherford, an incapacitated person. (Complaint). The Complaint asserts claims against the Defendants for Negligence (Count One), Negligent Supervision/Retention (Count Two), Violations of the Arkansas Long Term Care Resident's Rights Statute (Count Three), Civil Liability for Constituting Felony Neglect of an Endangered or Impaired Adult (Count Four), and Assault and Battery (Count Five). (Complaint). All claims asserted by Mr. Rutherford, however, must be submitted to arbitration pursuant to the above referenced Arbitration Agreement signed by Mr. Rutherford and Ms. Cathey for the reasons discussed herein.

## LEGAL AUTHORITIES

11. The claims asserted by Mr. Rutherford against Plaintiffs in the State Court Action are within the scope of and subject to the Arbitration Agreement. The Arbitration Agreement precludes the assertion of these claims in a civil action and, instead, requires that said claims be resolved in arbitration under the Arbitration Agreement and the FAA. Mr. Rutherford's State Court Action is in breach of the Arbitration Agreement and constitutes a failure by Mr. Rutherford to arbitrate as required by and pursuant to the Arbitration Agreement.

### A.   The Federal Arbitration Act Governs Arbitration In This Case And Preempts Any Arkansas Law To The Contrary.

The Federal Arbitration Act ("FAA") requires arbitration of claims when a contract contains a written arbitration provision and concerns a transaction involving interstate commerce. In this regard, the FAA, at 9 U.S.C. § 2, states the following:

8

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or for an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*See* Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* As such, the FAA governs arbitration of this matter.

The above statutory mandate of 9 U.S.C. § 2 concerning arbitrability of claims, like all of the FAA, rests upon the congressional authority granted by the Commerce Clause of the Federal Constitution to regulate commerce. *Southland Corp. v. Keating,* 465 U.S. 1, 11, 104 S. Ct. 852, 858 (1984). Thus, where it applies, the FAA binds both federal and state courts. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983); *Southland Corp,* 465 U.S. at 12, 104 S. Ct. at 859, *Allied-Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 254, 272-73, 115 S. Ct. 834, 839 (1995). This is so because federal law, via the Supremacy Clause of the Federal Constitution, precedes and preempts state law. The FAA, therefore, trumps any state law which arguably invalidates the Mr. Rutherford's consent to binding arbitration.

Plaintiffs acknowledge the section of the Arkansas Uniform Arbitration Act ("AUAA") prohibiting arbitration of personal injury and tort claims. *See* ARK. CODE ANN. § 16-108-201(b)(2). This code section provides, in relevant part, as follows:

> (b)(1)   A written provision to submit to arbitration any controversy thereafter arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable, save upon such grounds as exist for the revocation of any contract.

9

{B0771588}

(2)  This subsection shall have no application to personal injury or tort matters, employer-employee disputes, nor to any insured or beneficiary under any insurance policy or annuity contract.

*Id.* This code section is preempted by the FAA.

The Eighth Circuit Court of Appeals has held that where, as here, the underlying dispute involves interstate commerce, the FAA preempts the AUAA, thus allowing parties to arbitrate tort claims. *See Hudson v. Conagra Poultry Co.*, 484 F.3d 496 (8th Cir. 2007). *Hudson* involved a dispute between farmers ("Hudsons") and Conagra, a poultry processing plant, over a Broiler Grower Agreement ("BGA") that contained an arbitration clause. After Conagra terminated the BGA, the Hudsons filed a demand for arbitration under the arbitration clause of the BGA. The Hudsons also brought tort claims against Conagra in Arkansas state court. Conagra moved to compel arbitration. The trial court granted this motion, finding that the language of the arbitration provision encompassed the Hudsons' tort claims.

On appeal, the Hudsons argued that the district court erred in compelling arbitration of their tort claims because the AUAA prohibits arbitration of such claims. Noting that under the FAA courts typically "construe broad language in a contractual arbitration provision to include tort claims," the Eighth Circuit affirmed the lower court's order compelling arbitration of the tort claims. Specifically, the Court noted that the BGA was a contract involving interstate commerce such that it was governed by the FAA. Because the Hudson's tort claims fell within the language of the BGA's arbitration provision, the tort claims were subject to arbitration. The Court also noted that "nothing

10

in the BGA explicitly excludes tort claims from the reach of the broadly worded arbitration provision." *See also PRM Energy Systems, Inc. v. Primenergy, LLC*, No. 04-6157, 2005 WL 3783414 at *4 (not reported in F. Supp. 2d) (W.D. Ark. Nov. 15, 2005) (holding "[t]he FAA does not exempt tort claims from arbitration, but instead sweeps tort claims into the ambit of arbitration clauses unless their wording is such that it can be seen that the parties did not contract to arbitrate such claims").

Likewise, the Supreme Court of Arkansas has specifically acknowledged that when an underlying dispute involves interstate commerce, the FAA preempts the AUAA. *See Walton v. Lewis*, 337 Ark. 45, 49, 987 S.W.2d 262, 266 (1999); *Danner v. MBNA America Bank*, No. 06-1429, 2007 WL 1219747 (Ark. Apr. 26, 2007); *A.G. Edwards & Sons, Inc. v. Myrick*, 195 S.W.3d 388 (Ark. Ct. App. 2004). Furthermore, the Eighth Circuit Court of Appeals, Federal District Courts in Arkansas, and state appellate courts in Arkansas have routinely noted that arbitration is favored by a strong public policy and look with favor upon arbitration as an expeditious means of removing contentions from the area of litigation, which is less expensive to the parties and also eases congestion of court calendars. *See CD Partners, LLC v. Grizzle*, 424 F.3d 795, 800 (8th Cir. 2005) (noting "[t]here is a strong national policy in favor of arbitration"); *Bob Schultz Motors v. Kawasaki*, 334 F.3d 721, 724 (8th Cir. 2003) (holding "[t]he purpose of the Federal Arbitration Act was to establish 'a liberal federal policy favoring arbitration agreements'"); *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 680 (8th Cir. 2001) (noting "the FAA evinces a 'liberal federal policy favoring arbitration agreements'"); *Davidson v. Cingular Wireless, Inc.*, 2007 WL 896349 (E.D. Ark. 2007) (holding "[t]he

11

Federal Arbitration Act ("FAA") was created to establish 'a liberal federal policy favoring arbitration agreements'"); *McEntire v. Monarch Feed Mills, Inc.*, 276 Ark. 1, 3, 631 S.W.2d 307, 308 (1982) ("It has been said by this court, and by numerous others, that it is the policy of the law to encourage and uphold settlements of disputes in this manner."). Accordingly, pursuant to the FAA, this Court should enforce the Arbitration Agreement at issue in this case.

*Pest Management, Inc. v. Langer*, No. CA 05-1387, 2006 WL 2741921 (Ark. Ct. App. Sept. 27, 2006) is a recent case on point. In *Langer*, the Arkansas Court of Appeals held that parties can arbitrate tort claims where they agree that the FAA, rather than the AUAA, governs their arbitration agreement. The plaintiffs in *Langer* sued the defendant pest management company alleging negligent inspection of the plaintiffs' home. Pursuant to an arbitration clause in the inspection contract, which specifically stated "[t]he arbitration agreement . . . shall be governed by the Federal Arbitration Act," the defendant moved to compel arbitration under the FAA. The trial court denied the motion to compel arbitration, holding that because plaintiffs' claims sounded in tort, the claims were not subject to arbitration under the AUAA. On appeal, the defendant argued that the FAA, rather than the AUAA, governed the dispute, and that arbitration of the tort claims should be compelled. In reversing the trial court's ruling, the Arkansas Court of Appeals noted that the parties had specifically agreed that the FAA would apply and held that "[w]here the parties designate in the arbitration agreement which arbitration statute they wish to have control, the court should apply their choice." As such, the Court remanded the case back to the trial court for entry of an order compelling arbitration.

{B0771588}

Pursuant to *Langer*, the AUAA's prohibition against arbitrating tort claims does not apply where parties to an arbitration agreement specifically agree that the FAA, rather than the AUAA, will govern. In the present case, the Parties specifically agreed that the FAA governs. The Arbitration Agreement signed by Mr. Rutherford expressly states **"[t]he parties expressly agree that this Agreement shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq."** (Emphasis added). Because the Arbitration Agreement at issue specifically states that the FAA will apply, under *Langer*, the FAA, rather than the AUAA, should govern this action and this Court should compel arbitration.

*Linville v. Conagra, Inc.*, No. 1:04-CV-00004-WRW, 2004 WL 3167119 (E.D. Ark. May 19, 2004) (not reported in F. Supp. 2d) is another case worthy of review. In *Linville*, plaintiffs sued the defendants alleging a single claim for promissory estoppel. The defendants moved to compel arbitration as required under the contracts at issue. Plaintiffs argued that the FAA did not compel arbitration because their claim of promissory estoppel was a tort claim and did not arise from the contract. The Court rejected this argument, holding that "Courts have long recognized that non-contract claims may fall within the scope of a broad arbitration provision, as long as the claim relates to or arises from the subject matter of the agreement." In holding the arbitration provision at issue valid and enforceable, the Court stated "I have held that this claim arises from the contract entered into by the party, and that the arbitration provision therefore applies . . . [e]ven if I agreed that promissory estoppel is a tort, this would not change that conclusion."

{B0771588}

Likewise, in *IGF Insurance Company v. Hat Creek Partnership*, 76 S.W.3d 859 (Ark. 2002), the Arkansas Supreme Court held that the Federal Crop Insurance Act ("FCIA") preempted § 16-108-201(b)'s prohibition of arbitrating claims involving insurance contracts. In *IGF*, a landowner sued IGF for breach of a multiple peril crop insurance policy. Citing the FAA, IGF moved to compel arbitration. Plaintiff opposed arbitration, arguing that because an insurance contract was involved, § 16-108-201 prevented arbitration. In addition, Plaintiff argued that the claim involved representations by IGF's agent, such that a tort was involved and § 16-108-201 prohibited arbitration of those claims. The trial court agreed, denying IGF's motion to compel arbitration. On appeal, however, the Supreme Court of Arkansas held that the FCIA preempted § 16-108-201. Here, because the FCIA mandated arbitration clauses in federal crop reinsurance policies like the one at issue, the FCIA "preempts the Arkansas statute [§ 16-108-201] that would ordinarily render the arbitration clause unenforceable."

Moreover, courts outside of Arkansas have held that the FAA preempts state statutes, like ARK. CODE § 16-108-201, that prohibit arbitration of tort claims. *See Skewes v. Shearson Lehman Brothers*, 829 P.2d 874 (Kan. 1992) (holding that the FAA preempts the Kansas Uniform Arbitration Act, which prohibits arbitration of tort claims); *In re Conseco Finance Servicing Corp.*, 19 S.W.3d 562 (Tex. Ct. App. 2000) (holding that the FAA compels arbitration of claims for violation of the Texas Debt Collection Act and Deceptive Trade Practices Act, even though such claims were statutory causes of action, sounding wholly in intentional tort); *Lewis v. Circuit City Stores, Inc.*, No. 05-4001-JAR, 2005 WL 2179085 (D. Kan. Sept. 7, 2005) (not reported in F. Supp. 2d)

14

(holding retaliatory discharge claim may not be independently litigated under state law because the FAA does not limit arbitrability of tort claims and preempts any state law to the contrary); *Housh v. Dinovo Investments, Inc.*, No. Civ.-A.-02-2562-KHV, 2003 WL 1119526 (D. Kan. Mar. 7, 2003) (not reported in F. Supp. 2d) ("absent contractual intent to displace federal law regarding arbitration or to limit the scope of a broad arbitration clause, the FAA preempts the Kansas Uniform Arbitration Act provision which excludes tort claims from arbitration"); *Foodbrands Supply Chain Service, Inc. v. Terracon, Inc.*, No. Civ.-A-02-3504-CM, 2003 WL 23484633 (D. Kan. Dec. 8, 2003) (not reported in F. Supp. 2d) (holding that "Kansas courts have determined that the FAA preempts state laws that conflict with the FAA" and "[t]he FAA contains no exception for tort claims").

Therefore, based upon the authority cited above, and because of the interstate commerce involved in the dispute between the Parties, the FAA clearly preempts the AUAA and governs this Motion to Compel Arbitration.

### B.   Mr. Rutherford And Ms. Cathey Agreed To Arbitration And The Arbitration Agreement Clearly Governs The Present Dispute.

Congress provided in the FAA that a written agreement to arbitrate, in a contract involving interstate commerce, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract." 9 U.S.C. § 2. The FAA expresses a strong national policy in favor of arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *See Southland Corp. v. Keating*, 465 U.S. 1, 10, 105 S. Ct. 852, 857, 79 L. Ed. 2d 1 (1983). The United States Congress, by enacting the FAA, made clear its intent for arbitration

15

agreements to be enforced as written, and to prevent parties from avoiding their contractual obligations to arbitrate. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S. Ct. 1238 (1985).

Arbitration must be compelled if two requirements are met: (1) there is a valid arbitration provision that evidences the parties' agreement to submit their dispute to arbitration and (2) the dispute is within the scope of arbitration. *See* 9 U.S.C. § 2. Both requirements are satisfied in the case at bar.

Because the duty to arbitrate is a contractual obligation pursuant to the FAA, courts must determine from the language of the arbitration agreement whether the parties intended to arbitrate the particular dispute in question. *Davidson v. Cingular Wireless, LLC*, No. 2:06CV00133-WRW, 2007 WL 896349 at *2 (E.D. Ark. Mar. 23, 2007); *Walton*, 227 Ark. at 50, 987 S.W.2d at 266. Whether an arbitration agreement has been entered into is a question of law, controlled by the applicable state contract law. *Davidson, supra*, at *id.* In Arkansas, the essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 119-20, 27 S.W.3d 361, 365 (2000) (*citing Foundation Telecommunications v. Moe Studio*, 341 Ark. 231, 16 S.W.3d 531 (2000); *Hunt v. McIlroy Bank & Trust*, 2 Ark. Ct. App. 87, 616 S.W.2d 759 (1981)). *See also Davidson, supra*, at *id.* In the context of an arbitration agreement, the Arkansas Supreme Court has stated that the court should seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself,

16

with doubts and ambiguities being resolved in favor of arbitration. *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 119-20, 27 S.W.3d 361, 365 (2000).

In the present case, Mr. Rutherford and his Responsible Party, Karen Cathey, agreed to resolve any action, claim, or cause of action against Plaintiffs by arbitration. As previously noted, the Admission Agreement signed by Mr. Rutherford included an arbitration clause stating that "any and all claims or disputes that would constitute a cause of action in a court of law" are to be resolved through arbitration and the Consent to Arbitration contains similar language. (Exhibit "3"). The arbitration clause further states that disputes governed by the agreement include, but are not limited to, "claims for breach of contract or promise (express or implied); tort claims; and claims for violation of any federal, state, local or other governmental law, statute, regulation, common law or ordinance." (Exhibit "3"). Mr. Rutherford and Ms. Cathey were assisted in completing the Admission Agreement, including Appendix "D" titled Consent to Arbitration and Waiver of Jury Trial, and signed it of their own free will. As a result, a valid contract requiring arbitration of all claims asserted in this case was formed and continues to exist between Mr. Rutherford and Plaintiffs.[2]   Therefore, the only remaining question is whether the transaction contemplated in the Admission Agreement involves interstate commerce.

### C.   The Admission Agreement Involves Interstate Commerce.

---

[2] By signing the Admission Agreement, Mr. Rutherford "acknowledge[d] that [he] had an opportunity to question a representative of the Facility concerning the terms of th[e] Admission Agreement and the contents of the Handbook and Resident Admission Video and that any questions [he] had have been answered to [his] satisfaction." (*See* Exhibit "3").

{B0771588}

The FAA specifically sets forth in its scope as follows:

> A written provision . . . in a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Eighth Circuit and Arkansas law require that the FAA be applied when the transaction in question involves interstate commerce. *Hudson v. Conagra Poultry Co.*, 484 F.3d 496, 500 (8th Cir. 2007); *McEntire v. Monarch Feed Mills, Inc.*, 276 Ark. 1, 3, 631 S.W.2d 307, 309 (1982). Furthermore, Eighth Circuit and Arkansas case law recognize that the FAA is designed to have an expansive interpretation in order to reach all transactions or contracts that fall within "the broad scope of Congressional powers relating to interstate commerce," and that the broad scope also serves the basic purpose of the FAA – to overcome courts' refusals to enforce arbitration agreements. *IFG Ins. Co. v. Hat Creek P'ship.*, 349 Ark. 133, 138, 76 S.W.3d 859, 862 (2002) (*citing Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265 (1995)). *See also Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 679-80 (8th Cir. 2001).

The United States Supreme Court has provided guidance as to the meaning of the term "involving commerce." *See Citizens Bank v. Alafabco, Inc.*, No. 02-1295, 2003 WL 21251583 (U.S. June 2, 2003). In this regard, the Supreme Court has stated:

> We have interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce" – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. Because the statute provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause, **it is perfectly clear that the FAA encompasses a**

18

> **wider range of transactions than those actually 'in commerce' – that is, 'within the flow of interstate commerce.'**

*Citizens Bank*, 2003 WL 21251583 at *3 (internal citations omitted) (emphasis added).

Arkansas Courts have acknowledged the *Citizens Bank* standard. *See Pest Management, Inc. v. Langer, supra.*

> In the present case, the Arbitration Agreement at issue explicitly states as follows:

> The parties acknowledge that Facility regularly engages in transactions involving interstate commerce and that the services provided by Facility to you involve such interstate commerce. The parties expressly agree that this Agreement shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

(Exhibit "3", p. 12) (emphasis added).  Mr. Rutherford is bound by this provision as Arkansas cases hold that when the recited provisions in the agreement state the transaction involves interstate commerce, the FAA applies. *See McEntire*, 276 Ark. at 3, 631 S.W.2d at 309; *Pest Management, Inc. v. Langer, supra.* (holding that the contract at issue states "it is being made pursuant to a transaction involving interstate commerce" and that such was "in effect, a stipulation that removes the requirement for proof of connections with interstate commerce").  Furthermore, in the present case, the following facts clearly demonstrate the transaction at issue satisfies the FAA's "involving commerce" test as interpreted by the Supreme Court:

> (1)  The first evidence of interstate commerce is the fact that Isaac Rutherford and Karen Cathey both represented that they resided in Joplin, Missouri at the time of Mr. Rutherford's admission to the nursing home.  (Admission Agreement and Consent to Arbitration and Waiver of Jury Trial, p. 18).  Furthermore, two of four named

{B0771588}

Defendants in the State Court Action (Plaintiffs for purposes of this Complaint to Compel Arbitration) are organized under the laws of the State of Alabama.   (Complaint). Moreover, Plaintiffs have numerous contacts with out-of-state entities which are necessary in carrying out the requirements imposed upon the facility by the Admission Agreement.  Without these contacts and the benefits they provide, Mr. Rutherford could not receive the contracted for care and treatment. (Affidavit of Claude Lee, Exhibit "6"; Affidavit of Kathryn Laughter to be submitted by supplemental pleading, Exhibit "7"; Affidavit of Tina Whitley, Exhibit "8").

(2)     All of the pharmaceuticals used in the care and treatment of Mr. Rutherford are brought in from outside the State of Arkansas. (Affidavit of Claude Lee). These pharmaceuticals are manufactured outside the State of Arkansas and are shipped across state lines to Seniorcare Pharmacy of Missouri in Joplin, Missouri. *Id.* From there the pharmaceuticals are disbursed to Fayetteville and other facilities. *Id.* Medications given to Mr. Rutherford during his residency at Fayetteville include Metformin, Metoprolol, Lisinopril, Donezepil (Aricept), Glipizede, Simvast, and Ativan. (Affidavit of Kathryn Laughter).  The Physicians Desk Reference (2005) confirms that all of these medications were manufactured outside the State of Arkansas. (Excerpts from Physicians Desk Reference (2005), Exhibit "9").  In short, all drugs used in the care and treatment of Mr. Rutherford were manufactured outside of Arkansas and transferred across state lines for their ultimate consumption.

(3)     A similar situation exists with regard to the supplies used by the facility in the care and treatment of Mr. Rutherford. *Id.*  This would include the

20

housekeeping supplies used in maintaining a sanitary environment in his room. *Id.* All housekeeping supplies are manufactured by Johnson Diversity located in Sturtevant, Wisconsin, purchased from Network Services out of Chicago, Illinois, and shipped through Homewood, Alabama, to the facility in Arkansas. *Id.*

(4)     The beds used in the facility were purchased from Basic American Metal Products in Fond DuLac, Wisconsin. *Id.* All laundry supplies and chemicals are purchased from Ecolab, Inc. located in Brentwood, Tennessee. *Id.* Similarly, Ecolab, Inc. also performs maintenance on the laundry and dietary equipment in the facility. *Id.* Linens used in the facility are purchased from Phoenix Textile Corporation located in St. Louis, Missouri. *Id.*

(5)     Mr. Rutherford was also a Medicare and Medicaid patient. As a result, these programs have paid for the expenses Mr. Rutherford incurred while residing at the facility. (*Id.*; Affidavit of Tina Whitley). To date, the facility has received $18,112.04 from Medicare and $4,998.00 from Medicaid for treatment provided to Mr. Rutherford. *Id.* Because Medicare and Medicaid were responsible for paying for Mr. Rutherford's care and treatment, such care and treatment would not have been possible without this federal funding. Medicare funds originated with the federal government and passed through TriSpan Health Service, a Medicare intermediary located in Flowood, Mississippi.

(6)     The facility also provides care and treatment for individuals who reside outside of the State of Arkansas. (Affidavit of Claude Lee). These individuals are admitted to the facility under the same or similar circumstances as Mr. Rutherford.

21

{B0771588}

Because of the revenue supplied by these individuals from outside the State of Arkansas, the facility is able to provide the care, treatment, and services to Mr. Rutherford that are required by the Admission Agreement. *Id.*

The facts outlined above demonstrate that the "interstate commerce" requirement has been satisfied in this case. Although Plaintiffs have not identified any Eighth Circuit or Arkansas case law directly on point, Courts from other jurisdictions have repeatedly held that the "interstate commerce" requirement was satisfied under circumstances similar to those involved in this case. *See In re Nexion Health at Humble, Inc.,* 173 S.W.3d 67 (Tex. 2005) (claims against nursing home were due to be arbitrated where Medicare funds crossing state lines were "interstate commerce" thereby bringing contract within FAA); *Vicksburg Partners, L.P. v. Stephens,* 911 So. 2d 507 (Miss. 2005) (nursing home admission agreement affected "interstate commerce" for purpose of applying FAA where nursing home received supplies from out of state vendors, payments from out of state insurance companies, and Medicare, and case involved out of state defendants); *Owens v. Coosa County Healthcare, Inc.,* 890 So. 2d 983 (Ala. 2004) (affirming order compelling arbitration of personal injury and wrongful death claims against nursing home where medical supplies and equipment were purchased out of state, several patients at nursing home were from other states, and funding was received from Medicare); *McGuffey Health & Rehab. Center v. Gibson,* 864 So. 2d 1061 (Ala. 2003) (holding arbitration agreement enforceable in action against nursing home where portion of funding for the patient was from Medicare and medications, supplies, and equipment used for patient care were purchased from out of state); *Eldridge v. Integrated Health*

22

{B0771588}

*Services, Inc.*, 805 So. 2d 982 (Fla. Dist. Ct. App. 2001) (affirming granting of motion to compel arbitration filed by nursing home, implicitly finding that services provided by nursing home had requisite effect on interstate commerce); *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322 (1991) (holding that because defendants served non-resident patients, received reimbursements through Medicare payments, and sent peer review reports across state lines, the necessary nexus with interstate commerce was satisfied).

**D.     Courts From Other Jurisdictions Have Held Arbitration Agreements Enforceable In Actions Against Nursing Homes/Long-Term Care Providers Under Circumstances Similar To This Case.**

The issue before this Court is whether the Arbitration Agreement executed by Mr. Rutherford and Karen Cathey, as "Responsible Party" for Mr. Rutherford, should be enforced. The FAA, as interpreted and applied by the Eighth Circuit Court of Appeals and Arkansas Federal District Courts, clearly requires that the Parties' agreement to arbitrate be enforced. Moreover, other Courts throughout the country have addressed this issue and have held arbitration agreements to be enforceable under circumstances similar to those presented in this case.

The issue of whether arbitration agreements are enforceable in actions filed against nursing homes/long term care providers has been addressed on numerous occasions in Florida. Florida courts have held arbitration agreements to be enforceable in such cases on numerous occasions.

Most recently, in *Alterra Healthcare Corp. v. Estate of Linton ex rel. Graham*, 953 So. 2d 574 (Fla. Dist. Ct. App. 2007), the appeals court affirmed a trial court's order granting a motion to compel arbitration where the agreement at issue was part of a

23

{B0771588}

residency agreement signed by the son of an assisted living facility resident. The estate

argued the residency agreement at issue was not enforceable because the resident, Linton,

did not sign it and her son lacked authority to sign it. The Court of Appeals affirmed the

trial court's order, granting the motion to compel arbitration of the estate's claims against

the facility, and agreeing with the trial court's reasoning that Mrs. Linton "was an

intended third-party beneficiary of the agreement and thus bound by its terms relative to

arbitration." *Id.* at 576 & 579. *See also, Alterra Healthcare Corp. v. Bryant*, 937 So. 2d

263 (Fla. Dist. Ct. App. 2006), *review denied*, (Table, NO. SC06-2088) (Fla. 2007)

(affirming trial court's order compelling arbitration of resident's claims against two

assisted living facilities); *Bland, ex rel. Coker v. Healthcare and Retirement Corp. of

America*, 927 So. 2d 252 (Fla. Dist. Ct. App. 2006) (affirming order compelling

arbitration of action filed by daughter on behalf of mother/patient seeking damages for

alleged violation of Nursing Home Resident's Rights Act); *MN MedInvest Co., L.P. v.

Estate of Nichols ex rel. Nichols*, 908 So. 2d 1178 (Fla. Dist. Ct. App. 2005), *review

denied*, 924 So. 2d 809 (Fla. 2006) (reversing and remanding with instructions for trial

court to enter an order compelling arbitration of action against nursing home and related

parties for wrongful death, negligence, and breach of fiduciary duty); *Estate of Etting ex

rel. Etting v. Regents Park at Aventura, Inc.*, 891 So. 2d 558 (Fla. Dist. Ct. App. 2004),

*review dismissed* (Table, NO. SC05-428) (Fla. 2005) (affirming trial court's order

granting nursing home's Motion to Compel Arbitration of action filed by personal

representative of nursing home resident's estate against nursing home); *Five Points

Health Care, Ltd. v. Alberts*, 867 So. 2d 520 (Fla. Dist. Ct. App. 2004) (reversing trial

24

court's order denying nursing home's motion to compel arbitration of claims brought by nursing home resident under Florida's resident's rights statute); *Gainesville Health Care Center, Inc. v. Weston*, 857 So. 2d 278 (Fla. Dist. Ct. App. 2003) (reversing and remanding with instructions for trial court to enter an order granting defendant's Motion to Compel Arbitration of action filed by personal representative of estate against nursing home asserting claims based upon negligence, wrongful death, and violation of the Nursing Home Resident's Rights Act); *Consolidated Resources Healthcare Fund I, Ltd. v. Fenelus*, 853 So. 2d 500 (Fla. Dist. Ct. App. 2003) (holding trial court erred in denying defendant's Motion to Compel Arbitration of negligence and wrongful death claims brought by personal representative of estate against nursing home); *Integrated Health Services of Green Briar, Inc. v. Lopez- Silvero*, 827 So. 2d 338  (Fla. Dist. Ct. App. 2002) (reversing and remanding with instructions to trial court to grant Motion to Compel Arbitration of action against nursing home alleging improper care); *Eldridge v. Integrated Health Services, Inc.*, 805 So. 2d 982 (Fla. Dist. Ct. App. 2001) (affirming trial court's order compelling arbitration of patient's action against nursing home).

In a case arising in Mississippi, *Mariner Health Care, Inc. v. Weeks*, No. CIV A 4:04 CV244-P-B, 2006 WL 2056588 (N.D. Miss. July 21, 2006) (not reported in F. Supp. 2d), a Federal District Court issued an order compelling arbitration of claims by a nursing home resident where the arbitration agreement at issue had been signed by the resident's "legal representative."  Citing Mississippi law, the Federal District Court noted that "a person is bound by the contents of a contract he signs, whether he reads it or not." *Id*. at *1.

{B0771588}

*Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507 (Miss. 2005), is another case on point. This was a wrongful death action filed against a nursing home arising from alleged improper care provided for the patient. The defendant nursing home moved to compel arbitration and the trial court denied the motion. On Appeal, the Mississippi Supreme Court held that the arbitration agreement was enforceable and reversed and remanded to the trial court with instructions to compel arbitration in a manner consistent with the court's opinion.[3]

The "Responsible Party" for the resident at issue in *Vicksburg Partners* was the resident's daughter and she, like the Responsible Party in the present case, signed an admission agreement that included arbitration provisions. Furthermore, in regard to interstate commerce, the Court noted that the United States Supreme Court, in *Citizens Bank, supra,* held that "Congress' commerce clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'" *Id.* at 515. The Mississippi Supreme Court, accordingly, held that "nursing homes through general practice, which includes basic daily activities like receiving supplies from out of state vendors and payments from out-of-state insurance companies or the federal Medicare program, affect interstate commerce. Moreover, the defendants in this case include a Georgia corporation, a Tennessee corporation, and a Louisiana corporation, who collectively contribute to the operation of

---

[3] The arbitration agreement at issue in *Vicksburg Partners* involved a provision limiting damages that was held to be unenforceable. The remainder of the arbitration agreement, however, was deemed enforceable. There is no such provision in the Arbitration Agreement at issue in the present case.

26

Vicksburg Partners Nursing Home, which receives services and goods from out-of-state venders, takes in out-of-state residents, and receives payments from out-of-state insurance carriers, including federally accredited Medicare/Medicaid programs." *Id.* at 515.[4]

*Owens v. National Health Corp.,* No. M2005-01272-COA-R3-CV, 2006 WL 1865009 (Tenn. Ct. App. June 30, 2006) is another recent case on point. *Owens* involved an action against a nursing home and several affiliated entities alleging negligence on the part of the defendants in providing care and treatment for a nursing home patient. The patient's representative had signed a contract with the nursing home, which included an arbitration provision, upon the patient's admission to the nursing home. The defendants filed a Motion to Compel Arbitration and the trial court denied the motion. The defendants appealed to the Court of Appeals of Tennessee. On appeal, the Court of Appeals reversed and remanded for entry of an order compelling arbitration. The Court further concluded that, as a matter of law, the arbitration agreement was binding as to all named defendants in the case.

Likewise, in *Sanford v. Castleton Healthcare Center, LLC,* 813 N.E.2d 411 (Ind. Ct. App. 2006), the Indiana Court of Appeals affirmed the trial court's order compelling arbitration of a wrongful death and survival action filed against a nursing home. The action was filed by the patient's daughter, as personal representative of the estate of the

---

[4] *See also Covenant Health Rehab of Picayune, L.P. v. Brown,* 949 So. 2d 732 (Miss. 2007) (Mississippi Supreme Court held arbitration agreement in a nursing home admission contract enforceable against the estate of the deceased resident); *Kenneth Cleveland, M.D. v. Mann,* No. 2005-CA-00924-SCT, 2006 WL 2506753 (Miss. Aug. 31, 2006) (Mississippi Supreme Court holding arbitration agreement enforceable in wrongful death action filed by patient's beneficiaries against surgeon and surgeon's professional association after patient died following operation to repair bowel puncture during hernia operation).

27

patient, and the daughter had previously signed an admission contract, including an arbitration provision. The appellate court noted the issue on appeal to be "whether the trial court erred by enforcing the arbitration agreement at issue in compelling arbitration." *Sanford*, 813 N.E.2d at 415. The Court ultimately concluded that the trial court properly compelled the estate to arbitrate its survival and wrongful death claims. *Id.* at 421.

Appellate courts in Ohio have also held arbitration agreements to be enforceable in actions against nursing homes. *See Hanson v. Valley View Nursing & Rehabilitation Center*, No. 23001, 2006 WL 2060575 (Ohio Ct. App. July 26, 2006) (affirming trial court's order compelling arbitration in case filed by executor of estate of a patient against a nursing home based upon allegations of medical malpractice); *Broughsville v. OHECC, LLC*, No. 05CA008672, 2005 WL 3483777 (Ohio Ct. App. Dec. 21, 2005) (affirming trial court's decision staying case pending results of arbitration in negligence action filed against nursing home/long term care facility alleging resident sustained personal injury while under care of facility).

The United States District Court for the Eastern District of Texas recently addressed this issue in *Owens v. Nexion Health at Gilmer, Inc.*, No. 2:06 CV 519 DF, 2007 WL 84114 (E.D. Tex. March 19, 2007). In *Owens*, the defendants, Nexion Health at Gilmer, Inc., d/b/a Upshur Manor Nursing Home, Nexion Health of Texas, Inc., Nexion Health Leasing, Inc., and Nexion Health, Inc., filed a motion to compel arbitration in a negligence action brought after the death of a nursing home resident. The Federal District Court held the arbitration agreement was valid and required arbitration of all claims asserted by the plaintiff. In reaching this conclusion, the court noted that state

28

law principles governing the formation of contracts generally apply and that the primary concern of the court construing a written contract under Texas law was to ascertain the true intent of the parties as expressed in the written instrument.

The state appellate courts of Texas have, likewise, held arbitration agreements to be enforceable under circumstances similar to those involved in this case. *See In re Nexion Health at Humble,* 173 S.W.3d 67 (Tex. 2005) (holding arbitration agreement enforceable in claim against nursing home for damages under the Texas Wrongful Death Act and Texas Survival Statute while also noting that Medicare funds crossing state lines are "sufficient to establish interstate commerce" under the Federal Arbitration Act); *In re Ledet,* No. 04-04-00411-CV, 2004 WL 2945699 (Tex. App. Dec. 22, 2004) (not reported in S.W.3d) (holding incapacitated adult who required long term care was bound by terms of arbitration agreement signed by her son who was not her legally appointed guardian).

The Alabama Supreme Court has also addressed this issue on several occasions. In this regard, the Alabama Supreme Court has held arbitration agreements to be enforceable in actions against nursing homes/long term care providers on three separate occasions. *See Owens v. Coosa Valley Healthcare, Inc.,* 890 So. 2d 983 (Ala. 2004) (affirming trial court's order compelling plaintiff to arbitrate her claims for personal injury and wrongful death against the nursing home); *Briarcliff Nursing Home, Inc. v. Turcotte,* 894 So. 2d 661 (Ala. 2004) (reversing and remanding trial court's denial of defendant nursing home's Motion to Compel Arbitration in two wrongful death actions where two named plaintiffs had signed admission agreements on behalf of patients as a fiduciary party); and *McGuffey Health & Rehabilitation Center v. Gibson,* 864 So. 2d

{B0771588}

1061 (Ala. 2003) (reversing and remanding trial court's denial of defendant nursing home's Motion to Compel Arbitration where daughter of nursing home resident, as responsible party for nursing home resident, had signed an admission agreement including an arbitration provision and evidence established that the transaction involved interstate commerce due to Medicare funds and out of state goods and supplies used in caring for resident).

The highest court in Massachusetts recently held that an arbitration agreement signed as part of the nursing home admission process was enforceable. In *Miller v. Cotter*, 863 N.E.2d 537 (Mass. 2007), the Supreme Judicial Court of Massachusetts reversed a trial court's order denying a nursing homes motion to compel arbitration of claims made against it by the estate of a former resident. The Court also agreed with the Alabama Supreme Court and the Mississippi Supreme Court that "nursing home admissions [are] acts in interstate commerce subject to the Federal [Arbitration] Act (and its presumption that arbitration agreements should be enforced)." *Id.* at 682 (*citing Turcotte*, 894 So. 2d at 663 and *Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 510-11 (Miss. 2005)).

Finally, appellate courts in North Carolina and California have also held arbitration agreements enforceable in nursing home cases. *See Hogan v. County Villa Health Services*, 148 Cal. App. 4th 259 (Cal. Ct. App. 2007) (California Court of Appeals reversing trial court's order denying a nursing home defendant's motion to compel arbitration of claims brought by the children of a deceased resident); *Raper v. Oliver House, L.L.C.*, 637 S.E.2d 551 (N.C. Ct. App. 2006) (North Carolina Court of Appeals

reversing and remanding to the trial court for an order granting the motion to compel arbitration in action against an assisted living facility).

The arbitration issue presented in the present case appears to be an issue of first impression in Arkansas. Although the Plaintiffs acknowledge that the above referenced cases are not binding legal authorities, Plaintiffs respectfully submit that the above referenced decisions can and should be followed by this Court. These decisions support a finding that all claims asserted by the Mr. Rutherford are due to be arbitrated pursuant to the Arbitration Agreement signed by Mr. Rutherford and Ms. Cathey.

**E.     The Agreement To Arbitrate Includes All Named Defendants.**

Mr. Rutherford has named four Defendants in the State Court Action: (1) Northport Health Services of Arkansas, LLC d/b/a Fayetteville Health and Rehabilitation Center, (2) Northport Health Services, Inc., (3) NHS Management, LLC, and (4) Dion Ioanis Kalio. Northport Health Services of Arkansas, LLC d/b/a Fayetteville Health and Rehabilitation Center, Northport Health Services, Inc., and NHS Management, LLC are "affiliated" entities and all claims against them are covered by the scope of the provisions in the Arbitration Agreement. (Affidavit of Claude Lee). Dion Ioanis Kalio was an employee of Northport Health Services of Arkansas, LLC d/b/a Fayetteville Health and Rehabilitation Center at the time of the incident made the basis of this lawsuit. As such, all claims against Mr. Kalio are also covered by the scope of the provisions in the Arbitration Agreement if and when he is ever served with a Summons and Complaint.[5]

---

[5] Mr. Kalio is a named Defendant in the Complaint, but has not yet been served with a Summons and Complaint.

31

The subject Arbitration Agreement, therefore, is applicable to all claims asserted against all four of the foregoing parties.

The first page of the Admission Agreement signed by Mr. Rutherford and Ms. Cathey specifically provides that "This Admission Agreement ("Agreement") states the terms and conditions agreed by you . . . and Northport Health Services of Arkansas, LLC d/b/a Fayetteville Health and Rehabilitation Center as the licensed operator of the Facility." (Exhibit "3"). Furthermore, Paragraph 8 of the Admission Agreement states that "This Agreement creates a dispute resolution program (the "Program") which shall govern the resolution of any and all claims or disputes that would constitute a cause of action in a court of law . . . that you or any of your representatives may have now or in the future against Facility, any parent or subsidiary of Facility, any company affiliated with Facility, or any of Facility's officers, directors, managers, employees, or agents . . ." Accordingly, the scope of the arbitration agreement clearly covers all claims asserted against all named Defendants in the State Court Action.

Moreover, even if Northport Health Services, Inc., NHS Management, LLC, and Dion Ioanis Kalio are construed as nonsignatories to the contract, Eighth Circuit and Arkansas law recognize that nonsignatories to an arbitration contract may be deemed as parties, through ordinary contract and agency principles, for purposes of the FAA. *Nitro Distributing, Inc. v. Alticor, Inc.*, 453 F.3d 995, 999 (8th Cir. 2006); *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798-99 (8th Cir. 2005); *American Ins. Co., NAP v. Cazort*, 316 Ark. 314, 321, 871 S.W.2d 575, 579 (1994). The fact that nonsignatories are not specifically covered by an arbitration clause is not dispositive. *Id.* In this regard, the

32

Arkansas Supreme Court has noted a strong public policy for compelling claims to be together submitted to arbitration. *Id.* at 322, 871 S.W.2d at 580.

Mr. Rutherford's complaint specifically alleges the facility in which Mr. Rutherford resided is owned and operated by Northport Health Services of Arkansas, LLC d/b/a Fayetteville Health and Rehabilitation Center. (Complaint). Mr. Rutherford's Complaint further alleges that Northport Health Services, Inc. and NHS Management, LLC controlled the operation, planning, management, and quality control of Fayetteville. (Complaint, ¶ 24). Mr. Rutherford also alleges that the duties of Northport Health Services, Inc. and NHS Management, LLC include budgeting, marketing, human resources management, training, staffing, creation and implementation of all policy and procedure manuals used at Fayetteville, federal and state reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax and accounting control through fiscal policies established by Northport Health Services, Inc. and NHS Management, LLC. *Id.* In addition, Mr. Rutherford alleges that Northport Health Services of Arkansas, LLC d/b/a Fayetteville Health and Rehabilitation Center, Northport Health Services, Inc., and NHS Management, LLC are vicariously liable for the actions of Dion Ioanis Kalio. *Id.* at ¶ 25.

*Owens v. National Health Corp.,* 2006 WL 1865009 (Tenn. Ct. App. Nov. 20, 2006), is a case on point with respect to this issue. As previously discussed, *Owens* involved claims against a nursing home/long term care provider based upon alleged improper patient care. The patient's representative signed an admission and financial contract with NHC-Healthcare upon the patient's admission to the facility. A lawsuit was

33

subsequently filed against NHC-Healthcare, National Health Corporation, L.P. ("NHLP"), National Health Realty, Inc. ("NHR"), NHC, Inc. a/k/a NHC, Inc.-Tennessee ("NHC"), and NHC/OP, L.P. ("NHC/OP"). The trial court denied the defendants' Motion to Compel Arbitration and the Court of Appeals of Tennessee reversed and remanded to the trial court for entry of an order compelling arbitration.

On appeal, the plaintiff contended that, even if the contract was valid, only NHC-Healthcare could rely upon the Arbitration Agreement as it was the only named defendant that was a party to the contract. The Court rejected this argument and held that, as a matter of law, all named defendants could rely upon the arbitration section of the contract. In reaching this conclusion, the court noted that the claims against NHLP, NHR, HHC, and NHC/OP were based upon their respective ownership of NHC-Healthcare. The court further noted that "when the charges against a parent company and its subsidiary are based upon the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." *Id.* *9 (citations omitted). The court proceeded to state that "given the facts of this case, if this court were to allow appellee to bring suit in circuit court against NHLP, NHR, NHC, and NHC/OP while arbitrating her claims against NHC-Healthcare, the arbitration proceedings would essentially be rendered meaningless and this state's policy of arbitration would be frustrated." *Id.* at *9 (citations omitted).

Likewise, in the present case, if Mr. Rutherford is allowed to bring suit in Federal Court against Dion Ioanis Kalio and the affiliated entities of Northport Health Services,

34

{B0771588}

Inc. and NHS Management, LLC, while arbitrating claims against Northport Health Services of Arkansas, LLC d/b/a Fayetteville Health and Rehabilitation Center, the arbitration proceedings would essentially be rendered meaningless and the Eighth Circuit's and Arkansas' policy in favor of arbitration would be frustrated. Accordingly, all clams against all named Defendants in the State Court Action should be compelled to arbitration.

### F.    The Federal And State Court Proceedings Must Also Be Stayed.

Plaintiffs also ask that the proceedings in this case be stayed pending resolution of this matter through the arbitral process. Pursuant to the All Writs Act, 28 U.S.C. § 1651, this Court has the jurisdiction and authority to enjoin the proceedings in the State Court Action. In actions involving written arbitration agreements, the FAA requires that such actions be stayed pending resolution of the arbitral process:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which suit or proceeding is referable to arbitration under such an agreement, **shall** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). *Kadow v. A.G. Edwards and Sons, Inc.*, 721 F. Supp. 201, 203 (W.D. Ark. 1989) (stating that "Section 3 requires a federal court in which suit has been brought 'upon any issue referable to arbitration under an agreement in writing for such arbitration' to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement.").

35

## PRAYER FOR RELIEF

Pursuant to the Arbitration Agreement, the FAA, and applicable law, Plaintiffs are entitled to a judgment by this Court enforcing the arbitration agreement and directing and compelling Mr. Rutherford to arbitrate his alleged claims against Plaintiffs. *See* 9 U.S.C. § 2; *see also MedCam, Inc. v. MCNC*, 414 F.3d 972, 974 (8th Cir. 2005); *Casteel v. Clear Channel Broadcasting, Inc.*, 254 F. Supp. 2d 1081, 1087 (W.D. Ark. 2003) (citation omitted).

WHEREFORE PREMISES CONSIDERED, Plaintiffs are entitled to, pray for, and demand a judgment:

1. Ordering, directing, and compelling Mr. Rutherford to arbitrate the claims asserted in the State Court Action in accordance with his Arbitration Agreement and the Federal Arbitration Act;

2. Enjoining Mr. Rutherford from proceeding in the State Court Action and enjoining Mr. Rutherford from taking any further action outside of arbitration on or in regard to his claims against Plaintiffs;

3. Staying further proceedings in the action *sub judice* pending the conclusion of arbitration of Mr. Rutherford's claims against Plaintiffs or in the alternative dismissing this matter without prejudice; and

4. Granting Plaintiffs any other relief to which they may be entitled.

Respectfully submitted,

HARDIN, JESSON & TERRY, PLC
Attorneys at Law
P.O. Box 10127
Fort Smith, Arkansas 72917-0127
Telephone: (479) 452-2200

By: *Stephanie L Randall*

Kirkman T. Dougherty
Arkansas Bar No. 91133

36

Stephanie I. Randall
Arkansas Bar No. 92075

and

Reed R. Bates (BAT024)
Rik S. Tozzi (TOZ001)
STARNES & ATCHISON LLP
Seventh Floor, 100 Brookwood Place
P.O. Box 598512
Birmingham, Alabama 35259-8512
Telephone: (205) 868-6000

Attorneys for Plaintiffs